Minute Order Form (06/97)

JS-6

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James H. Alesia | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 3293 | **DATE** | March 22, 2001 |
| **CASE TITLE** | *Nationscredit Home Equity Services Corporation  vs. City of Chicago* | | |

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**MOTION:**

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. The court grants defendant's motion to dismiss plaintiff's second amended complaint [12-1]. Plaintiff's second amended complaint is dismissed with prejudice for lack of subject-matter jurisdiction.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | number of notices | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | |
| | No notices required. | | | |
| | Notices mailed by judge's staff. | | 3/23/01 | 31 |
| ✓ | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | C.S. | |
| ✓ | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | date mailed notice | |
| CW | courtroom deputy's initials | | | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| NATIONSCREDIT HOME EQUITY SERVICES CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **Case No. 00 C 3293** |
| | ) | |
| CITY OF CHICAGO, | ) | **Judge James H. Alesia** |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Currently before the court is defendant's motion to dismiss plaintiff's second amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons set forth below, the court dismisses plaintiff's second amended complaint with prejudice for lack of subject-matter jurisdiction.

## I. BACKGROUND

Plaintiff's second amended complaint makes the following allegations which, for purposes of ruling on this motion, the court accepts as true. On November 21, 1997, the owner of record of 6146 South Carpenter, Chicago, Illinois ("the property") obtained from JVS Financial Group ("JVS") a loan secured by a mortgage to the property. On the same day, JVS sold and assigned this mortgage to Nationscredit ("plaintiff"). The mortgage was recorded on December 1, 1997, and the assignment of mortgage to plaintiff was recorded on March 23, 1998, at the Office of Recorder of Deeds of Cook County, Illinois.

On or about April 17, 1998, pursuant to the Illinois Municipal Code, 65 ILL. COMP. STAT. 5/11-31-1 *et seq.*, and City Ordinance 13-9-010 ("Fast Track"), the City of Chicago ("defendant") filed a complaint for alleged building code violations pertaining to the property. On or about June 30, 1998, the Circuit Court of Cook County ("the circuit court") entered an emergency order for demolition of the building and premises, stating that "the subject building poses an immediate dangerous and hazardous threat to public health, safety and welfare, and must be demolished immediately." (Def.'s Mem., Ex. E.) On July 17, 1998, the property was demolished pursuant to the circuit court's order. Plaintiff was not named as a defendant in the building-violation case, and it alleges that it never received notice of the existence of the case.[1]

On or about September 22, 1999, plaintiff filed a complaint for damages in the Circuit Court of Cook County.[2] On May 3, 2000, plaintiff amended its complaint to raise a federal

---

[1] Plaintiff never states when or how it became aware that its collateral had been destroyed. In its second amended complaint, plaintiff merely alleges that it was never served with formal notice of the demolition case and it did not "have notice of this [demolition] case until after all of the events hereinafter described in this complaint had occurred." (Pl.'s Second Am. Compl. at ¶ 8.)

[2] In its supplemental memorandum, plaintiff states that, after its property was demolished, over a year transpired before it filed a complaint for damages because plaintiff "was not aware that the City had demolished its collateral until more than one year after it had filed" its complaint. (Pl.'s Mem. at 3.) This statement confounds the court, as does the possibility that a mortgagee might not realize for over a year that its collateral has been demolished. Once the mortgagor ceased making mortgage payments, this put the mortgagee on notice that either the mortgagor was in default, or the building had been abandoned or even perhaps demolished. At the time it ceased receiving payments, then, plaintiff could have protected its property interest by going to the scene and inspecting the property to determine the status of its collateral and subsequently filing a suit for foreclosure. Nevertheless, the court must take plaintiff's allegations as true for purposes of this motion.

2

question. The circuit court dismissed the state law claims in count I of plaintiff's amended complaint as time-barred by the applicable statute of limitations, leaving the § 1983 claim in count II of plaintiff's amended complaint. It is this §1983 claim which is now pending. Defendant then removed the case to federal court on May 31, 2000. In its amended complaint, plaintiff alleged that the demolition violated its due process rights under 42 U.S.C. § 1983 ("§ 1983") because defendant failed to give it notice of the building-violation case prior to the demolition, in violation of 65 ILL. COMP. STAT. 5/11-31-1(e). However, because plaintiff's amended complaint failed to allege that the demolition was the result of a policy or custom of defendant's, plaintiff's amended complaint failed to state a claim for violation of § 1983. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). Accordingly, on August 10, 2000, this court granted in part and denied in part defendant's motion to dismiss plaintiff's amended complaint. (Ct. Order dated Aug. 10, 2000.) The court gave plaintiff leave to file a second amended complaint to allege that defendant acted pursuant to a policy or custom when it caused the constitutional injury. (*Id.*)

On August 22, 2000, plaintiff filed the second amended complaint now at issue, alleging that defendant acted pursuant to the Fast Track demolition procedures, which "constituted either an express municipal policy or a clearly established municipal custom of the defendant which deprived the plaintiff of its property without due process of law." (Pl.'s Second Am. Compl. at ¶ 15.) Again, plaintiff alleged that the demolition violated its due process rights under § 1983 because defendant failed to give it notice of the building-violation case prior to the demolition,

in violation of 65 ILL. COMP. STAT. 5/11-31-1(e). Plaintiff asks the court to award it $68,000, the alleged value of the property at the time it was demolished.

Currently before the court is defendant's motion to dismiss plaintiff's second amended complaint. In its motion, defendant argues that plaintiff alleges neither an express municipal policy nor a widespread practice so permanent and well-settled as to constitute custom or usage with the force of law, and that plaintiff, therefore, still fails to allege municipal liability under § 1983. In the alternative, defendant argues that plaintiff's second amended complaint should be dismissed because the demolition was not carried out under defendant's fast-track demolition program but rather pursuant to court order.

After the parties fully briefed defendant's motion to dismiss, this court ordered the parties to file supplemental memoranda of law addressing the court's jurisdiction in light of the *Rooker-Feldman* doctrine.[3] (Ct. Order dated Jan. 16, 2001.) Before addressing the merits of plaintiff's second amended complaint, the court must address whether it has subject-matter jurisdiction over the present suit.

---

[3]The court also ordered the parties to be prepared to discuss five other issues at a status hearing, namely: (1) whether the one-year statute of limitations established by the Illinois Tort Immunity Act precludes this action against defendant; (2) whether this cause of action is more appropriately a state law claim for damages rather than a civil rights action under §1983; (3) whether, as a mortgagee, the plaintiff has standing to bring this action; (4) whether the amount plaintiff seeks to recover in this action includes the value of the real estate lot, and if not, whether this action could result in a double recovery for the plaintiff; and (5) whether the owner of the property is an indispensable party to this action. (Ct. Order dated Nov. 20, 2000.) As discussed below, the court finds that it lacks subject-matter jurisdiction under *Rooker-Feldman*. *See infra* Sect. II.B. Therefore, there is no need for the court to address the remaining five issues.

4

## II. DISCUSSION

**A.      Standard for Deciding a Rule 12(b)(6) Motion to Dismiss**

When deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"), the court must accept all well-pleaded allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *See Midwest Grinding Co. v. Spitz*, 976 F.2d 1016, 1019 (7th Cir. 1992); *Cromley v. Bd. of Educ. of Lockport*, 699 F. Supp. 1283, 1285 (N.D. Ill. 1988). If, when viewed in a light most favorable to the plaintiff, the complaint fails to state a claim upon which relief can be granted, the court must dismiss the case. *Gomez v. Illinois State Bd. of Educ.*, 811 F.2d 1030, 1039 (7th Cir. 1987). The court may dismiss the complaint only if it appears beyond a doubt that the plaintiff can prove no set of facts in support of its claim that would entitle it to relief. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

However, the Supreme Court has explained that "'[w]ithout jurisdiction the court cannot proceed at all in any cause.' ... The requirement that jurisdiction be established *as a threshold matter* ... is 'inflexible and without exception.'" *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94-95 (1998) (emphasis added) (citations omitted). Objections to subject-matter jurisdiction cannot be waived, and parties are free to question the court's subject-matter jurisdiction at any time. *See United States v. County of Cook*, 167 F.3d 381, 387-88 (7th Cir. 1999). If the parties neglect the subject, a court must raise jurisdictional questions itself. *Id.* A federal court may not resolve the merits of a case until it is certain that it has proper subject-matter jurisdiction over the controversy. *Christianson v. Colt Indus. Op. Corp.*, 486 U.S. 800, 818 (1988). *See also Cook v. Winfrey*, 141 F.3d 322, 325 (7th Cir. 1998) ("a federal court must assure itself that it possesses

jurisdiction over the subject matter ... before it can proceed to take any action respecting the merits."). Therefore, before addressing the merits of plaintiff's second amended complaint, the court must first determine whether it has proper subject-matter jurisdiction over the present suit.

**B.** *Rooker-Feldman* **Doctrine**

The *Rooker-Feldman* doctrine – derived from two Supreme Court decisions – is based upon the recognition that lower federal courts do not have the power to exercise appellate review over state court decisions. *Manley v. City of Chicago*, 236 F.3d 392, 396 (7th Cir. 2001) (citing *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923); *District of Columbia Ct. of Appeals v. Feldman*, 460 U.S. 462 (1983)). Under *Rooker-Feldman*, lower federal courts lack jurisdiction over claims seeking review of state court judgments or over claims that are "inextricably intertwined" with state court determinations. *4901 Corp. v. Cicero*, 220 F.3d 522, 526 (7th Cir. 2000). Thus, a party who seeks to overturn a state court judgment must proceed through the state judicial system and can seek federal review only from the United States Supreme Court. *Id.*

To determine whether *Rooker-Feldman* applies, the court must determine whether the federal plaintiff seeks to set aside a state court judgment or whether the plaintiff is, in fact, presenting an independent claim. *Id.* In other words, "if the injury which the federal plaintiff alleges resulted from the state court judgment itself, then *Rooker-Feldman* controls, and the lower federal courts lack jurisdiction over the claim. It does not matter that the state court judgment might be erroneous or even unconstitutional." *Id.* (citing *Kamilewicz v. Bank of Boston Corp.*, 92 F.3d 506, 510 (7th Cir. 1996)).

Further, a federal plaintiff may not seek the reversal of a state court decision simply by casting his complaint in the form of a constitutional violation. *See Garry v. Geils*, 82 F.3d 1362, 1369 (7th Cir. 1996). Thus, constitutional claims that are "inextricably intertwined" with state court judgments negate federal district court jurisdiction because they would call for review of the state court's decision. *Garry*, 82 F.3d at 1368 (citing *Feldman*, 460 U.S. at 482). To determine whether the plaintiff is attacking the state court judgment itself, the nature of the injury is crucial. For example, in *GASH Associates v. Rosemont*, 995 F.2d 726 (7th Cir. 1993), the Seventh Circuit found that the federal plaintiff was not asserting a separate constitutional violation but was attacking the judgment of the state court. *Id.* at 728-29 (holding that *Rooker-Feldman* applied where federal plaintiff's § 1983 for improper taking was an attack on the state court's confirmation of a foreclosure sale of his house). Specifically, the Seventh Circuit found that the plaintiff did not suffer any injury out of court but that the injury came from the judgment confirming the sale of the federal plaintiff's home. *Id.*

In its most straight-forward presentment, *Rooker-Feldman* bars federal jurisdiction when the federal plaintiff alleges an injury that was caused by a state court judgment. *Remer v. Burlington Area Sch. Dist.*, 205 F.3d 990, 996 (7th Cir. 2000). However, the *Rooker-Feldman* doctrine is not limited to those claims that allege that the state court judgment caused the plaintiff's injury – it also precludes federal jurisdiction over those claims that are "inextricably intertwined" with a state court determination, even if those claims were not raised in the state court proceeding. *Id.* Thus, impermissible review by a federal court may occur when a district court is asked to entertain a claim that was not even raised in the state court. *Ritter v. Ross*, 992

F.2d 750, 753 (7th Cir. 1993) (holding that the *Rooker-Feldman* doctrine precluded the federal plaintiffs from bringing their § 1983 claim against a county treasurer after their home was foreclosed upon by the county). In assessing the applicability of *Rooker-Feldman* in a particular case, the key inquiry is "whether 'the district court is in essence being called upon to review the state-court decision.'" *Manley*, 236 F.3d at 396 (quoting *Ritter*, 992 F.2d at 753). In resolving this inquiry, the court must determine whether the injury alleged by the federal plaintiff resulted from the state court judgment itself or is distinct from that judgment. *Garry*, 82 F.3d at 1365.

The court will discuss three issues in deciding the applicability of *Rooker-Feldman* in this case. First, the court will determine the actual cause of plaintiff's injury. Second, the court will determine whether the "reasonable opportunity" exception to *Rooker-Feldman* applies in this case. Finally, the court will determine whether *Rooker-Feldman* is rendered inapplicable by the fact that the federal plaintiff was not a party in the prior state case.

### 1.   Cause of Plaintiff's Injury

In its effort to avoid *Rooker-Feldman*, plaintiff makes two arguments that its injury did not result from the state court judgment. First, plaintiff argues that it was the destruction of its collateral, not the state court's judgment, that gives rise to this action. Second, plaintiff argues that it was the alleged lack of notice, not the state court's judgment, that gives rise to this action. The court will explore both of plaintiff's arguments.

Plaintiff's first argument – that it was the destruction of its collateral, not the state court's judgment, that gives rise to this action – fails because the destruction of plaintiff's collateral was the direct result of the state court order which found that the property violated building codes and

authorized demolition. Absent that order, plaintiff would not have been injured. If the state court had not approved of the demolition (*i.e.*, if plaintiff had prevailed in the building violations case or had succeeded in preventing demolition of the property), then plaintiff would have no injury, and, consequently, no federal claim. In other words, it was the state court's judgment – the order of demolition – that caused the destruction of plaintiff's collateral and caused plaintiff's actual injury. But for the state court demolition judgment, the property would not have been demolished, and plaintiff would have suffered no injury. *See Garry*, 82 F.3d at 1368 (finding that the "injury alleged was only complete when the state court actually condemned the property."). *See also Residents of the New Ritz Hotel v. City of Chicago*, No. 99 C 6826, 2001 WL 58958, at *8 (N.D. Ill. Jan. 22, 2001).

Second, plaintiff argues that it was the alleged lack of notice, not the state court's judgment, that gives rise to this action. In making this argument, plaintiff maintains that the factual premise of its federal claim is the lack of notice of the demolition itself, and it would not have had factual grounds to bring that federal claim in the state court case. In so arguing, plaintiff concludes that its suit is an independent cause of action for damages not inextricably intertwined with the state court judgment. The court disagrees. What plaintiff actually complains of is not the lack of notice, but the state court judgment of demolition. *See Neely v. Law Offices of Kevin J. Hermanek, P.C.*, No. 00 C 1337, 2000 WL 804670, *2 (N.D. Ill. June 21, 2000) (dismissing case for lack of subject-matter jurisdiction under *Rooker-Feldman*, despite the fact the plaintiff received no notice, when the plaintiff's loss of property was the result of the enforcement of an order of replevin by the state court). While plaintiff complains that defendant deprived it of its

property without due process, the injuries it alleges were complete only when the circuit court entered the demolition order. *See Garry,* 82 F.3d at 1368 (stating that, had plaintiffs avoided state judgment of condemnation, they would have no federal claims). While the alleged lack of notice may have impeded plaintiff's constitutional rights, it was the demolition of the property that directly caused the actual harm, and this demolition was the direct result of the circuit court's demolition order. *See Young v. Murphy,* 90 F.3d 1225, 1231 (7th Cir. 1996) (concluding that, despite alleged due process errors, if plaintiff had prevailed at competency hearing, there would be no injury or federal claim); *GASH,* 995 F.2d at 728-29 (finding no claim independent of state court judgment confirming sale); *Ritter,* 992 F.2d at 754-55 (stating that state court foreclosure judgment was subject of federal lawsuit, and, therefore, *Rooker-Feldman* applied).

To prevail on its claim, plaintiff would inevitably be forced to challenge the validity of the state court order. A litigant may not attempt to circumvent the effect of *Rooker-Feldman* and seek reversal of a state court judgment simply by casting the complaint in the form of a civil rights action. *See GASH,* 995 F.2d at 727 (finding that plaintiff "objects to the outcome of a judicial proceeding and filed a separate suit to get around it," and therefore *Rooker-Feldman* precluded plaintiff's federal suit); *Ritter,* 992 F.2d at 754 (finding that federal plaintiff's objections to state court foreclosure judgment was subject of federal lawsuit, and, therefore, *Rooker-Feldman* applied). Litigants who believe that a state judicial proceeding has violated their constitutional rights must appeal that decision through their state courts and then to the Supreme Court. *See Centres, Inc. v. Town of Brookfield, Wisconsin,* 148 F.3d 699, 702 (7th Cir. 1998). If this court were to award the relief plaintiff seeks in the form of monetary damages equal to the value of the

property destroyed, "this result would effectively reverse the state court judgment upholding" the demolition. *Maple Lanes, Inc. v. Messer*, 186 F.3d 823, 826 (7th Cir. 1999). Even if plaintiff's injury resulted from the alleged lack of notice, the injury suffered by plaintiff is too inextricably intertwined with the state court judgment and its order of demolition to render it distinct from the judgment. *See Williams v. City of Joliet*, No. 99 C 3297, 2000 WL 968825, at *3 (N.D. Ill. July 12, 2000). Therefore, plaintiff's due process argument cannot be considered separate from the circuit court's demolition order.

In sum, this court lacks subject-matter jurisdiction under *Rooker-Feldman* because plaintiff's injury – the demolition of its property – was caused by the state court judgment and order of demolition. *See, e.g., GASH*, 995 F.2d at 728-29 (holding that *Rooker-Feldman* applied where federal plaintiff's § 1983 claim attacked a state court's confirmation of a foreclosure sale of his house and that plaintiff did not suffer any injury out of court but only from the judgment confirming the sale); *Ritter*, 992 F.2d at 753 (holding that *Rooker-Feldman* precluded federal plaintiffs from bringing their § 1983 claim against a county treasurer after their home was foreclosed upon by the county). If the proceedings in the circuit court had resulted in its favor, plaintiff would not have been deprived of its property as it alleges. *See Garry*, 82 F.3d at 1368 (plaintiffs acknowledged that, had they avoided the state court judgment of condemnation, they would have had no federal claim). Plaintiff's claim is clearly "a federal claim alleging injury caused by a state court judgment" not "a federal claim alleging a prior injury that a state court failed to remedy." Consequently, under *Rooker-Feldman*, a federal court is precluded from

considering plaintiff's claim. *Centres*, 148 F.3d at 702; *Long v. Shorebank Dev. Corp.*, 182 F.3d 548, 555 (7th Cir. 1999).

## 2.   Exception to the *Rooker-Feldman* Doctrine

In an attempt to avoid *Rooker-Feldman*, plaintiff invokes the "reasonable opportunity" exception to the *Rooker-Feldman* doctrine. Specifically, plaintiff argues that it did not have any opportunity to pursue its federal due process claim in state court because it never received any notice of the state court demolition case. In essence, plaintiff repeats its argument that it would not have had the factual grounds to bring its claim in the state court because the factual premise of its claim is the lack of notice.

The "reasonable opportunity" exception to the *Rooker-Feldman* doctrine was carved out by the Seventh Circuit in *Long v. Shorebank Dev. Corp.*, 182 F.3d 548 (7th Cir. 1999). In *Long*, the Seventh Circuit reasoned that *Rooker-Feldman* "can apply only where the plaintiff had a reasonable opportunity to raise his federal claim in state proceedings." *Long*, 182 F.3d at 558. Otherwise, the court reasoned, *Rooker-Feldman* "might deprive the plaintiff from any forum, state or federal, where he has a reasonable opportunity to present his federal constitutional claims, a result arguably contrary to the requirements of due process." *Id.* Accordingly, a claim cannot be inextricably intertwined with a state court judgment if the plaintiff did not have a reasonable opportunity – through intervention or otherwise – to litigate the claim in state court. *Id.* To invoke the "reasonable opportunity" exception, the plaintiff must point to some action or procedure of the state court – independent of the actions of the opposing party – that prevent it from presenting its claims to the state court. *Id.*

12

In *Long*, the federal plaintiff was wrongfully evicted from her home after an eviction order was fraudulently obtained against her in state court. *Long*, 182 F.3d at 552-53. Subsequently, the plaintiff brought suit in federal court under §1983, alleging due process violations. *Id.* at 555. Although the court found that plaintiff's due process claim was inextricably intertwined with the state court eviction order, it concluded that *Rooker-Feldman* was inapplicable to the plaintiff's claims. *Id.* at 559. Defendants had sought to evict the plaintiff by instituting a forcible entry and detainer action against her, and under Illinois law, only claims germane to the issue of possession may be pursued in a forcible entry and detainer proceeding. *Id.* Because plaintiff's federal claims were at best only tangentially related to the issue of possession, it was likely that the state court would have precluded her federal claim as not germane to defendant's forcible entry and detainer action. *Id.* at 560. Therefore, plaintiff did not have a reasonable opportunity to raise her federal claims in state court, and *Rooker-Feldman* was inapplicable. *Id.* Also, the court in *Long* found that the "reasonable opportunity" exception would apply if a federal plaintiff is unable to appeal the state court decision and its petitions to the State Supreme Court and the United States Supreme Court are both denied. *Id.* at 548.

Here, the "reasonable opportunity" exception to *Rooker-Feldman* does not apply. Nothing in Illinois law or in Illinois state court procedures prevented plaintiff from raising its federal claim in state court or appealing the circuit court's decision to a state court.[4] At best, plaintiff might

_____

[4] A plaintiff cannot avoid *Rooker-Feldman* simply by not submitting its claim in state court. *Manley,* 236 F.3d at 397. The fact that plaintiff "may have already waived the opportunity to challenge the constitutionality of the condemnation, leaving [it] with no forum in which to assert [its] claim, does not affect our lack of jurisdiction under *Rooker-Feldman.*" *Garry,* 82 F.3d
(continued...)

show that the action of the opposing party – defendant's alleged failure to serve plaintiff with proper notice – prevented plaintiff from presenting its federal claim in the circuit court proceeding. This is not enough to establish the "reasonable opportunity" exception to the *Rooker-Feldman* doctrine. *Long*, 182 F.3d at 558.

In sum, the "reasonable opportunity" exception to *Rooker-Feldman* does not apply. Plaintiff has the Illinois court system at its disposal for the adjudication of its federal constitutional claims. *Residents of the New Ritz Hotel*, 2001 WL 58958, at \*5 ("the state court is the 'proper forum' to adjudicate matters related to condemnation and ... the state court is fully equipped to address any federal constitutional claims."). There are a variety of options available to the plaintiff in Illinois state courts, and plaintiff has not alleged that these state remedies are inadequate or unavailable. *See McKenzie v. City of Chicago*, 118 F.3d 552, 556 (7th Cir. 1997) ("[i]f Chicago errs and razes a building without proper notice, or wrecks a structure that does not fit the terms of the law, it opens itself to an inverse condemnation action."); *Hager v. City of West Peoria*, 84 F.3d 865, 869 (7th Cir. 1996) ("Illinois law provides a judicially-created remedy of inverse condemnation for property owners aggrieved by municipal legislation."); *Olisan v. Ryan*, No. 99 C 4384, 2000 WL 1263597, at \*6 (N.D. Ill. Sept. 5, 2000) (dismissing claims under *Rooker-Feldman* because the plaintiffs did not allege that it was impossible for them to bring their constitutional claims in Illinois state court). Moreover, there is no procedural due process

---

[4](...continued)
at 1369. *See also Feldman*, 460 U.S. at 482, n.16 ("[b]y failing to raise his claims in state court a plaintiff may forfeit his right to obtain review of the state-court decision in any federal court."); *4901 Corp.*, 220 F.3d at 528 ("'[n]or does it matter that the time for appeal to the United States Supreme Court may have passed.'") (quoting *Kamilewicz*, 92 F.3d at 510).

exception to the *Rooker-Feldman* doctrine. *Ritter*, 992 F.2d at 752-54 (finding that plaintiffs' complaint was barred by *Rooker-Feldman* even though it alleged that they did not receive notice of the foreclosure action); *Neely*, 2000 WL 804670, at *2 (dismissing case for lack of subject-matter jurisdiction under *Rooker-Feldman*, despite the fact the plaintiff received no notice, when the plaintiff's loss of property was the result of the enforcement of an order of replevin by the state court).

### 3. Plaintiff as a Non-Party to the State Action

A final complicating factor in this case is the fact that plaintiff was not a party to the prior state court action.[5] In *Lemonds v. St. Louis County*, 222 F.3d 488 (8th Cir. 2000), the Eighth Circuit recognized a current circuit split on this issue. As the court in *Lemonds* recognized, some circuits have held that *Rooker-Feldman* does not apply to bar a federal plaintiff who was not a party in the preceding state court action. *Lemonds*, 222 F.3d at 494-95 (citing *Bennett v. Yoshina*, 140 F.3d 1218, 1223-24 (9th Cir. 1998); *United States v. Owens*, 54 F.3d 271, 274 (6th Cir. 1995); *Valenti v. Mitchell*, 962 F.2d 288, 297-98 (3d Cir. 1992)). On the other hand, as the court in *Lemonds* noted, some courts have not hesitated to apply *Rooker-Feldman* against parties who did not participate in the state suit. *Id.* at 495 (citing *T.W. & M.W. v. Brophy*, 124 F.3d 893, 898 (7th Cir. 1997); *Republic of Paraguay v. Allen*, 949 F. Supp. 1269, 1273 (E.D. Va. 1996), *aff'd*, 134 F.3d 622, 628 (4th Cir. 1997); *Williams v. Adkinson*, 792 F. Supp. 755, 761-63 (M.D. Ala. 1992), *aff'd*, 987 F.2d 774 (11th Cir. 1993)). Meanwhile, other courts have definitively stated

---

[5]Plaintiff fails to argue that it escapes *Rooker-Feldman* because it was not a party to the underlying state court proceeding, but, ironically, defendant raises this issue.

that the applicability of *Rooker-Feldman* should not depend on the identity of the parties in the state and federal suits. *Id.* (citing *Bates v. Jones*, 131 F.3d 843, 855-57 (9th Cir. 1997) (en banc) (Rymer, J., concurring); *Roe v. Alabama*, 43 F.3d 574, 586 (11th Cir. 1995) (Edmondson, J., dissenting)).

Seventh Circuit law is unclear. In some cases, the Seventh Circuit has made a blanket statement that *Rooker-Feldman* is inapplicable to a federal plaintiff who was not a party to the state court proceeding. *See Allen v. Allen*, 48 F.3d 259, 261 (7th Cir. 1995); *Leaf v. Supreme Court of Wisconsin*, 979 F.2d 589, 598 (7th Cir. 1992). Contrary to that statement, however, in some cases, the Seventh Circuit has actually applied *Rooker-Feldman* or its underlying principles to bar a federal plaintiff who was not a party to the state court proceeding.[6] *T.W. & M.W.*, 124 F.3d at 895; *Hoover v. Wagner*, 47 F.3d 845, 849 (7th Cir. 1995). Nevertheless, a review of Seventh Circuit case law demonstrates a distinction. *Rooker-Feldman* consistently has not applied when (1) a federal plaintiff was not a party in the state proceeding, and (2) its rights were not affected by the state proceeding. *See Allen*, 48 F.3d at 261; *Leaf*, 979 F.2d at 598. In contrast, *Rooker-Feldman* consistently has applied when (1) a federal plaintiff was not a party in the state proceeding, and (2) its rights were affected by – and, therefore, inextricably intertwined with – the state proceeding. *See T.W. & M.W.*, 124 F.3d at 895; *Hoover*, 47 F.3d at 849. Thus, when a federal plaintiff was not a party to the state proceeding, the pivotal question appears to

---

[6]As an aside, the Seventh Circuit also has found that *Rooker-Feldman* applies despite the fact that the *defendants* in the federal suit were not parties to the previous state proceeding. *Newman v. State of Indiana*, 129 F.3d 937, 942 (7th Cir. 1997).

be whether its rights nonetheless *were affected by the state proceeding* and therefore are *inextricably intertwined* with the state proceeding.

In *Allen*, the Seventh Circuit found that *Rooker-Feldman* did not apply to bar a federal action by a plaintiff who was not a party to a state court custody and visitation proceeding regarding his biological daughter. *Allen*, 48 F.3d at 261. The state court had previously determined custody and visitation rights, but plaintiff was not a party to the state action because he had not established his paternity. *Id.* at 260. The plaintiff brought the federal suit claiming, *inter alia,* deprivation of his federal constitutional rights. *Id.* The Seventh Circuit observed that the federal plaintiff was not a party to the underlying custody and visitation proceedings he challenged. *Id.* at 261. Then the court made the blanket statement that *Rooker-Feldman* did not apply because the doctrine extends "only to parties to ongoing state court litigation while specifically leaving non-parties free to pursue their claims."[7] *Id.* Critical to the Seventh Circuit's decision not to apply *Rooker-Feldman*, however, was the fact that the federal plaintiff's rights were not affected by the state court proceeding because – even though he later proved he was the biological father – at the time of the state court proceeding, he had not sought to establish his paternity, and thus *"he had no legal rights to be affected at the time."* *Id.* at 260 (emphasis

---

[7] In *Allen*, the plaintiff still was precluded from bringing his federal suit because – although *Rooker-Feldman* did not apply – the domestic relations exception to federal jurisdiction prevented the federal court from hearing his claims. *Allen*, 48 F.3d at 261. *See Ankenbrandt v. Richards*, 504 U.S. 689 (1992) (re-affirming the longstanding rule that domestic disputes involving divorce, custody or alimony issues are the province of state courts, and that this rule is a limitation on federal jurisdiction); *Alpern v. Lieb*, 38 F.3d 933 (7th Cir. 1994) (finding that the domestic relations exception barred federal suit seeking stay of divorce proceedings and subsequent damages suit against state judge).

added). In other words, although not clearly articulated by the Seventh Circuit, it appears *Rooker-Feldman* did not apply because (1) the federal plaintiff was not a party in the state proceeding, *and* (2) his rights were not affected by – and therefore not inextricably intertwined with – the state proceeding.

Similarly, in *Leaf*, the Seventh Circuit found that *Rooker-Feldman* did not apply to bar a federal action by a plaintiff who was not a party to state court disciplinary proceedings. *Leaf*, 979 F.2d at 598. The Wisconsin Supreme Court suspended plaintiff Leaf's law license for engaging in professional misconduct, in part because she entered into a business relationship with her co-plaintiff, Dr. Haynes, a non-lawyer. *Id.* at 592. Leaf and Haynes then brought federal suit alleging, *inter alia*, that their constitutional rights were violated by the state court disciplinary proceedings. *Id.* at 594. In regard to Haynes, the Seventh Circuit found that *Rooker-Feldman* did not apply and that Haynes was free to bring his federal claim in federal court. *Id.* at 598. Again, critical to the Seventh Circuit's decision was the fact that Haynes's rights were not affected by the state court disciplinary proceedings. Haynes was neither an attorney nor a party to the disciplinary proceedings, and his rights were not affected by the state court's suspension of Leaf's law license. *Id.* at 598-99. In other words, it appears *Rooker-Feldman* did not apply because (1) Haynes was not a party in the state proceeding, *and* (2) his rights were not affected by – and therefore not inextricably intertwined with – the state proceeding.[8]

---

[8]Notably, in *Remer*, while the Seventh Circuit found that plaintiff's federal lawsuit was not barred by *Rooker-Feldman*, the fact that the federal plaintiff was not a party to the prior state proceeding was not a factor in the court's analysis. *Remer*, 205 F.3d at 997-98. Rather, the court's analysis hinged on the fact that the plaintiff's federal claim was based on the school board's expulsion of her son which was not inextricably intertwined with the state court

(continued...)

In sharp contrast, the Seventh Circuit has precluded actions by a federal plaintiff not a party to the state proceeding when the federal plaintiff's rights were affected by the state court proceeding. For example, in *T.W. & M.W.*, the Seventh Circuit barred a federal action by plaintiffs who were not parties to a state court custody proceeding. *T.W. & M.W.*, 124 F.3d at 895. In that case, the state court proceeding involved a custody dispute between the foster parents and an aunt of two young children. *Id.* at 895. The federal plaintiffs – the two children who were the subject of the custody battle – brought suit against officials and institutions concerned with the provision of social services to children. *Id.* at 894. In their suit, the federal plaintiffs claimed that the defendants violated the equal protection clause of the Fourteenth Amendment by conspiring to remove them for racist reasons from their white foster parents and place them with a black aunt who had sexually abused them. *Id.* at 895. Although the children were not parties in the state custody proceeding, the Seventh Circuit found that – because the children's suit attacked the judgment of the state court awarding custody of the children to the aunt – it was barred under *Rooker-Feldman* and must be dismissed. *Id.* at 898. Although not clearly articulated by the Seventh Circuit, it appears *Rooker-Feldman* applied in this case, in contrast to *Allen* and *Leaf*, because (1) while plaintiffs were not parties in the state custody proceeding, (2) their rights clearly were affected by – and therefore inextricably intertwined with – the state proceeding.

---

[8](...continued)
injunction. *Id.*

Similarly, in *Hoover*, the Seventh Circuit barred a federal action by plaintiffs who were not parties to state court injunction restricting anti-abortion protests near certain abortion clinics. *Hoover*, 47 F.3d at 849. The state court injunction prohibited named defendants "and all persons acting in concert with them and having received notice of" the injunction from certain protest activities. *Id.* at 846. The federal plaintiffs, including a journalist, were not parties in the state court injunction. *Id.* at 847. In their federal claims, they sought declaratory and injunctive relief, alleging that they were deterred from engaging in protests because they feared that the injunction would be interpreted as prohibiting them from talking to or standing near named defendants. *Id.* Although the federal plaintiffs were not parties in the state court injunction, they had been threatened with arrest, arrested, and even prosecuted for violation of the injunction simply for being within the vicinity of abortion clinics that were being picketed by defendants named in the injunction. *Id.* In addition, the federal plaintiffs had forgone picketing to avoid these harms, and thus had abandoned their constitutional rights of free speech. *Id.* Therefore, the federal plaintiffs' rights were affected by the state court proceeding even though they were not parties in the state court proceeding. In its discussion, the Seventh Circuit stated that plaintiffs were not parties to the state court action "and *ordinarily* that would bar the defendants' invocation of *Rooker-Feldman*." *Id.* at 849 (emphasis added). Nevertheless, the court affirmed the district court's dismissal of the suit after applying the principles underlying *Rooker-Feldman*. Namely, the relief the plaintiffs sought would interfere with the state court proceedings, and "it would be an abuse of discretion, in light of the principles of equity and comity ... to grant the relief sought

by the plaintiffs."[9] *Id.* at 851. Again, although not clearly articulated by the Seventh Circuit, it appears *Rooker-Feldman* did apply because (1) while plaintiffs were not parties in the state proceeding, (2) their rights were clearly affected by – and therefore inextricably intertwined with – the state proceeding.

In general, these cases demonstrate that in the Seventh Circuit *Rooker-Feldman* is not rendered inapplicable by the mere fact that the federal plaintiff was not a party in the prior state case. Rather, as recently highlighted by the Eighth Circuit, insisting that the federal and state parties be identical confuses *Rooker-Feldman* with principles of *res judicata. Lemonds*, 222 F.3d at 495. As the court stated in *Lemonds*, "whereas *res judicata* is largely a matter of common law and involves the impropriety of permitting parties to have 'two bites at the apple,' *Rooker-Feldman* is based squarely on federal law and is concerned with federalism and the proper delineation of the power of the lower federal courts." *Id.* Accordingly, the fact that the federal plaintiff was not a party to the state suit "is not by itself dispositive." *Id.* Rather, it remains that, in determining whether *Rooker-Feldman* applies, the pivotal inquiry is not the exact similarly of the parties but rather whether the federal plaintiff raises independent claims or merely seeks to set aside a state court judgment. *See Remer*, 205, F.3d at 996.

---

[9] *See Homola v. McNamara*, 59 F.3d 647, 650 (7th Cir. 1995) (explaining that *Rooker-Feldman* "is based on the principle that inferior federal courts cannot reexamine the decisions of state tribunals in civil litigation" and that "a decision by a state court, however erroneous, is not itself a violation of the Constitution actionable in federal court."); *Lemonds*, 222 F.3d 495 ("*Rooker-Feldman* is based squarely on federal law and is concerned with federalism and the proper delineation of the power of the lower federal courts."); *Admin. Comm. v. Maxwell*, No. 99 C 3021, 2000 WL 286886, at *3 (N.D. Ill. Mar. 9, 2000) ("[g]rounded in principles of comity, the *Rooker-Feldman* doctrine prevents federal courts from exercising jurisdiction in an appellate capacity over the state court judicial process.").

The case at hand is similar to *T.W. & M.W.* and *Hoover* because, although plaintiff was not a party to the state court demolition proceeding, its rights were clearly affected by the state court proceeding that ordered demolition of its collateral. Therefore, under the distinction articulated above, *Rooker-Feldman* does apply to bar plaintiff's federal claim because (1) while plaintiff was not a party to the state proceeding, (2) its rights were clearly affected by– and, therefore, inextricably intertwined with – the state proceeding.

In sum, this court lacks subject-matter jurisdiction under *Rooker-Feldman* because the viability of plaintiff's § 1983 procedural due process claim hinges on the validity of the state court demolition order. Because the damages plaintiff alleges it is entitled to resulted directly from the enforcement of the state court's demolition order, the present claim is inextricably intertwined with the state court's decision. This court cannot grant relief to the plaintiff without disrupting the final judgment in the circuit court demolition proceedings. Thus, if this court were to decide the merits of plaintiff's claim, it would result in an impermissible review of the circuit court's decision under *Rooker-Feldman*. The plaintiff's lack of notice problem should be an appeal of the state court decision, not a separate federal suit, and any relief plaintiff wants must be requested in state court. Because this court finds it has no subject-matter jurisdiction over plaintiff's claims there is no need for it to address either the merits of plaintiff's claims or defendant's motion to dismiss. *See Centres*, 148 F.3d at 703 (stating that, because the *Rooker-Feldman* doctrine is jurisdictional, its applicability ends litigation in federal court); *Okoro v. Bohman*, 164 F.3d 1059, 1061 (7th Cir. 1999) (stating that "jurisdictional issues should be addressed first and if they are resolved against jurisdiction the case is at an end and there is no

occasion to address the merits."). Accordingly, the court dismisses plaintiff's second amended complaint with prejudice for lack of subject-matter jurisdiction.

### III. CONCLUSION

For the foregoing reasons, the court grants defendant's motion to dismiss plaintiff's second amended complaint. Plaintiff's second amended complaint is dismissed with prejudice for lack of subject-matter jurisdiction.

Date: MAR 2 2 2001

James H. Alesia
United States District Judge